## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE,** *a pseudonym* | : | |
| PLAINTIFF | : | |
| **vs.** | : | |
| | : | |
| **MAIN LINE HOSPITALS, INC.,** | : | |
| **t/a, d/b/a, a/k/a BRYN MAWR** | : | **Civil Action No.: 2:20-cv-02637** |
| **HOSPITAL** | : | |
| 130 South Bryn Mawr Avenue | : | |
| Bryn Mawr, PA 19010 | : | |
| | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **MAIN LINE HEALTH INC.,** | : | |
| **t/a, d/b/a, a/k/a BRYN MAWR** | : | |
| **HOSPITAL** | : | |
| 130 South Bryn Mawr Avenue | : | |
| Bryn Mawr, PA 19010 | : | |
| DEFENDANTS: | | |

# <u>COMPLAINT</u>

## <u>INTRODUCTORY STATEMENT</u>

1. Plaintiff, Jane Doe (a pseudonym), brings these claims for discrimination, retaliation, and failure to provide reasonable accommodations against her former employers, Defendants, Main Line Hospitals, Inc., and Main Line Health, Inc., under the Americans with Disabilities Act, As Amended, 42 U.S.C. §§ 12101, *et seq.*, (the "ADAAA"), and the Federal Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.,* (the "Rehabilitation Act")[1] and avers that the Defendants acted unlawfully toward her by:

---

[1] Plaintiff also dual-filed her discrimination claims against Defendants with the Pennsylvania Human Relations Commission ("PaHRC") claiming identical violations of the Pennsylvania Human Relations Act ("PHRA"). But the statutorily-required one-year term from the filing date with the PaHRC has not yet expired. 43 P.S. § 962(c)(1). Plaintiff will seek to amend her Complaint to add her PaHRA claim to this matter under this Court's supplemental jurisdiction after the administrative exhaustion period has lapsed.

(a). Subjecting her to adverse employment actions because of and/or on the basis of her disability, namely, as a recovered drug addict;

(b). Discriminating against her because of her disability after upon their discovery that she was a recovered drug addict;

(c). Forcing her to disclose the existence and nature of her disability in the absence of objective evidence that she had not or could not perform all the essential functions of her job;

(d). Assuming and/or presuming that she must have stolen or diverted prescription drugs because of and/or solely due to her status as a recovered drug addict;

(e). Subjecting her to an unlawful medical examination;

(f). Treating her differently than similarly-situated employees who were not recovered drug addicts;

(g). Improperly classifying and/or identifying her based on her disability;

(h). Assuming and/or presuming that she had a disability or other disorder that she does not have; and/or

(i). Improperly classifying and/or identifying her based on her assumed and/or presumed disability.

2. This action has been brought to redress the violations of Plaintiff's rights as secured by the ADAAA and the Rehabilitation Act, and she seeks all the damages and remedies available to her under those laws.

## **THE PARTIES**

3. Plaintiff, is an adult individual who resides in Pennsylvania.

4. Defendant, Main Line Hospitals, Inc., is, through information and belief, a corporation that regularly conducts, and is authorized to regularly conduct, business in Pennsylvania, and which maintains its

principal place of business and corporate nerve center at 130 South Bryn Mawr Avenue, Bryn Mawr, PA 19010.

5. At all times material and relevant to the allegations in this Complaint, Defendant, Main Line Hospitals, acted, or failed to act, by or through its duly designated officers, directors, shareholders, principals, employees, or agents.

6. Defendant, Main Line Health, Inc., is, through information and belief, a corporation that regularly conducts, and is authorized to regularly conduct, business in Pennsylvania, and which maintains its principal place of business and corporate nerve center at 130 South Bryn Mawr Avenue, Bryn Mawr, PA 19010.

7. At all times material and relevant to the allegations in this Complaint, Defendant, Main Line Health, acted, or failed to act, by or through its duly designated officers, directors, shareholders, principals, employees, or agents.

8. At all times material and relevant to the allegations in this Complaint, Defendant, Main Line Hospitals, and/or Defendant, Main Line Health, operated Bryn Mawr Hospital, located in Bryn Mawr, Pennsylvania.

9. Unless otherwise indicated, Defendant, Main Line Hospitals, Inc., and Defendant, Main Line Health, Inc., shall be collectively referred to in this Complaint as "the Main Line Defendants."

10. At all times material and relevant to the allegations in this Complaint, Plaintiff was an employee of one or both of the Main Line Defendants, as a nurse at Bryn Mawr Hospital ("BMH").

## JURISDICTION

11. This Court has original jurisdiction over Plaintiff's claims under the ADAAA and the Rehabilitation Act under 28 U.S.C. § 1331 (federal question jurisdiction).

## VENUE

12. Venue is proper in this Court under 28 U.S.C. § 1391(b), because the acts, events, or omissions giving rise to Plaintiff's claims occurred within this judicial district—specifically at BMH where Plaintiff worked.

## ADMINISTRATIVE EXHAUSTION

13. On or about August 9, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she charged the Main Line Defendants with discrimination under, and violations of, the ADAAA.[2]

14. On or about March 12, 2020, Plaintiff received a Dismissal and Right to Sue Notice, dismissing her administrative charges.

15. Plaintiff has thus fulfilled all the administrative prerequisites under federal law to commencing the present lawsuit.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16. Plaintiff incorporates by reference paragraphs one through 15, as though fully set forth at length.

17. At all times material and relevant to the allegations in this Complaint, Plaintiff was—and remains—a Registered Nurse under the laws of the Commonwealth of Pennsylvania.

18. On or around 13 years ago, one or more of the Main Line Defendants hired Plaintiff as a nurse at BMH.

19. During her employment, and up until the circumstances that led to the present suit, Plaintiff was a good employee and never received any

---

[2] On the same date, Plaintiff dual-filed her charge with the PaHRC in accordance with the work-sharing agreement between the PaHRC and the EEOC, in order to assert her identical rights under state law. Presently, however, the minimum one-year administrative exhaustion period under the PHRA has not yet expired, *43 P.S. § 962(c)(1)*, nor has the PaHRC made any decisions or determinations as to Plaintiff's state law claims. As such, Plaintiff's state law claims are not yet ripe.

formal discipline from the Main Line Defendants.

20.  During her employment and up until the circumstances that led to the present suit, all of Plaintiff's employment reviews were positive.

21.  To her knowledge, no patient safety complaints were lodged against Plaintiff during her employment with one or more of the Main Line Defendants.

22.  On or about May 15, 2019, Plaintiff received a telephone call from Terry Dougherty ("Dougherty"), the Director of Human Resources at BMH.

23.  At all times material and relevant to the allegations in this Complaint, Dougherty was Plaintiff's supervisor.

24.  Dougherty told Plaintiff that she had received a letter containing allegations about Plaintiff that she wanted to discuss.

25.  On or about May 15, 2019, Plaintiff met with Dougherty and Fiona Felton ("Felton"), the Director of Nursing at BMH.

26.  At all times material and relevant to the allegations in this Complaint, Felton was Plaintiff's supervisor.

27.  At that meeting, Dougherty showed Plaintiff a typed letter that she said she had received from an anonymous sender.

28.  Dougherty read the contents of the letter to Plaintiff, which stated that Plaintiff was a recovering drug addict.

29.  After reading the letter, Dougherty asked Plaintiff to admit whether she was a recovering drug addict.

30.  Plaintiff truthfully disclosed to Dougherty and Felton that she had been a recovered drug addict for approximately four years and had received inpatient treatment for drug addiction.

31.  Plaintiff also told Dougherty and Felton that she had been clean for the last four years, had attended narcotics anonymous meetings, was under treatment from a psychiatrist, and had a sponsor.

32.  After disclosing that information, Dougherty told Plaintiff that BMH now needed "to do an investigation," and "go through any missing medications."

33.  To Plaintiff's knowledge, however, the anonymous letter Dougherty neither alleged nor claimed that Plaintiff had ever diverted or stolen medications from BMH.

34.  Dougherty then told Plaintiff that she was suspended without pay as of May 16, 2019 pending the findings of the investigation, and directed Plaintiff to undergo a mandatory assessment with Michael Sherman ("Sherman"), an Employee Assistance Consultant, and that she could not return to work without being cleared by him.

35. On or about May 21, 2019, Plaintiff met with Sherman.

36.  Sherman told Plaintiff that her returning to work "shouldn't be a problem," because she had completed rehabilitation and had a sponsor.

37. Sherman also told Plaintiff that she needed to provide a note from her treating psychiatrist verifying her treatment and rehabilitation status.

38.  Plaintiff believes that sometime between May 28 and May 30, 2019, her psychiatrist sent an email to Sherman confirming her treatment and rehabilitation status.

39. On or about May 30, 2019, Dougherty directed Plaintiff to attend a meeting at BMH with her and Felton.

40.  At that meeting, Felton told Plaintiff that they had allegedly found nine medications that were unaccounted for over the last six months, and as such, they were "moving for termination."

41.  Neither Felton nor Dougherty, however, showed, provided, or reviewed any medication audit reports with Plaintiff.

42.  Dougherty then told Plaintiff that she had "better call the State Board" of Nursing before she did.

43.  Plaintiff was then told she was being terminated for "suspicion of

diverting controlled substances."

44.  Plaintiff never stole or diverted any medications from BMH or the Main Line Defendants.

45.  Felton presented Plaintiff with termination paperwork and asked her to sign it. Plaintiff refused.

46.  On or about July 9, 2019, Linda Carrick ("Carrick"), the Vice President of Nursing for one or more of the Main Line Defendants, told Plaintiff that the Main Line Defendants were upholding their decision to terminate her employment.

47.  Carrick also offered Plaintiff the opportunity to voluntarily resign in lieu of termination. Plaintiff refused.

48.  At the time Plaintiff was placed on unpaid suspension, she was slated to begin a new shift schedule at BMH, working 24 hours a week and every fourth weekend, plus benefits.

49.  Plaintiff believes, and therefore avers, that had she not been placed on unpaid suspension and subsequently terminated, she would have earned $42.94 / hour on those shifts between 7:00 AM and 3:00 PM and $46.69 / hour between 3:00 PM and 7:00 PM.

50.  The Main Line Defendants' actions in placing Plaintiff on an unpaid suspension then subsequently terminating her employment caused Plaintiff to suffer a substantial loss of wages and benefits.

51.  The Main Line Defendants' actions in placing Plaintiff on an unpaid suspension then subsequently terminating her employment caused Plaintiff to suffer a great deal of embarrassment, humiliation, anxiety, and depression, which has exacerbated the mental and emotional strains she faces as a recovered drug addict.

52.  The Main Line Defendants' actions in placing Plaintiff on an unpaid suspension then subsequently terminating her employment resulted in a pending administrative proceeding by the Commonwealth of Pennsylvania Board of Nursing, which not only has caused—and

continues to cause—Plaintiff stress, anxiety, and resources, but which threatens her ability to continue practicing as a Registered Nurse in Pennsylvania.

## COUNT I

### AMERICANS WITH DISABILITIES ACT, AS AMENDED (42 U.S.C. §§ 12101, *et seq.)* (Discrimination)

53.  Plaintiff incorporates by reference paragraphs one through 52, as though fully set forth at length.

54.  At all times material and relevant to the allegations in this Complaint, one or more of the Main Line Defendants were Plaintiff's "employer" as defined by section 12111(5)(A) of the ADAAA (42 U.S.C. § 12111(5)(A)).

55.  At all times material and relevant to the allegations in this Complaint, Plaintiff was an "employee" of one or more of the Main Line Defendants, as that term is defined by section 12111(4) of the ADAAA (42 U.S.C. § 12111(4)).

55.  Plaintiff is a recovered drug addict.

56.  Plaintiff believes, and therefore avers, that her drug addiction constitutes a physical and/or mental impairment that could cause her to suffer with difficulty thinking, reading, concentrating, communicating, or working.

57.  While she has been clean for more than four years, Plaintiff's drug addiction is not a transient condition, but rather a permanent one that she believes she will suffer from the remainder of her life.

58.  Plaintiff's documented history of, and rehabilitation and treatment for, prior drug addiction constitutes a disability under sections 12102 and 12114 of the ADAAA (42 U.S.C. §§ 12102, 12114) and relevant regulations.

59.  At all times material and relevant to the allegations in this Complaint, the Main Line Defendants had actual or constructive

knowledge that she was a recovered drug addict who had been through, and successfully completed, rehabilitation and medical treatment for that condition.

60.    Despite her prior positive work history, the absence of any credible, objective evidence or suspicion, and without any indication that Plaintiff could not perform all the essential functions of her job, the Main Line Defendants acted unlawfully under the ADAAA when they:

(a).  forced Plaintiff to disclose her status as a recovered drug addict.

(b).  assumed, or presumed, that Plaintiff must have stolen or diverted medications from BMH because she was a recovered drug addict.

(c).  suspended Plaintiff without pay because of her status as a recovered drug addict;

(d).  commenced an internal investigation regarding Plaintiff because of her status as a recovered drug addict;

(e).  required Plaintiff to submit to an assessment with an Employee Assistance Consultant;

(f).  required Plaintiff to submit and disclose medical records pertaining to her disability, medical treatment, and recovery to the Employee Assistance Consultant;

(g).  terminated Plaintiff's employment because of her status as a recovered drug addict;

(h).  assumed and/or presumed that Plaintiff had a mental or physical disability that she did not have;

(i).  assumed and/or presumed that Plaintiff must have acted and/or failed to act in a specific way because of and/or due to her status as a recovered drug addict;

(j).  assumed and/or presumed that because Plaintiff was a recovered drug addict, allowing her to remain an employee,

would create an actual or potential liability to BMH and/or the Main Line Defendants in the future; and

(i).    acted against Plaintiff based upon generalized stereotypes and/or assumptions regarding individuals who are recovered drug addicts.

61.  Plaintiff believes, and therefore avers, that the Main Line Defendants treated her differently than similarly-situated employees who were not recovered drug addicts.

62.  Plaintiff believes, and therefore avers, that the Main Line Defendants did not want a Registered Nurse who was a recovered drug addict to work at BMH.

63.  Plaintiff believes, and therefore avers, that the Main Line Defendants' termination of her employment for suspicion of diverting medication, constituted pretext.

64.  Rather, Plaintiff believes and avers that the Main Line Defendants considered her to be a liability solely because of her status as a recovered drug addict, without any other knowledge or information.

65.  Plaintiff believes, and therefore avers, that but for discovering or learning that she was a recovered drug addict, the Main Line Defendants never would have suspended, investigated, or fired Plaintiff.

66.  In so doing, the Main Line Defendants did not act upon any specific knowledge, information, or facts about Plaintiff or her functional capacities, other than the fact that she was a recovered drug addict who had successfully completed rehabilitation four years ago; rather, Plaintiff believes the Main Line Defendants acted only upon unfounded misperceptions, stereotypes, or prejudicial assumptions concerning an individual who are recovered drug addicts and who continue to require treatment by a psychiatrist and support from a sponsor.

67.  The Main Line Defendants illegally classified and defined Plaintiff on the basis of her disability in a way that directly led to their differential treatment of Plaintiff from other employees who had no

history of drug addiction.

68. For those reasons, Plaintiff believes, and therefore avers, that the Main Line Defendants discriminated against her based on her disability by denying her the employment opportunities and benefits that were equal and available to other similarly-situated employees who were not recovered drug addicts.

69. Plaintiff believes, and therefore avers, that the Main Line Defendants' actions against her identified above were intentional or willful.

70. Plaintiff seeks all the rights and remedies to which she is entitled under the ADAAA and applicable federal regulations, including compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests for this Honorable Court to enter judgment in her favor and against the Main Line Defendants and award her damages for lost past wages and benefits, lost present wages and benefits, lost future wages and benefits, as well as damages for humiliation, emotional distress, loss of standing and reputation, punitive damages, declaratory and injunctive relief, attorneys' fees and costs, and all other such relief that this Court deems to be necessary, appropriate or just. Plaintiff demands a jury trial.

## COUNT II

### THE REHABILITATION ACT
### (29 U.S.C. §§ 701, *et seq.)* (Discrimination)

71. Plaintiff incorporates by reference paragraphs one through 70, as though fully set forth at length.

72. Plaintiff is a qualified individual with a disability as defined by Section 7(20)(B)(C) of the Rehabilitation Act. *29 U.S.C. § 705(20)(B)(C).*

73. Plaintiff believes, and therefore avers, that all times material and relevant to the allegations in this Complaint, the Main Line Defendants

were principally engaged in the business of providing health care services for which they received Federal funds and assistance in the form of Medicare payments, Medicaid payments, grants, and more.

74.    Despite her prior positive work history, the absence of any credible, objective evidence or suspicion, and without any indication that Plaintiff could not perform all the essential functions of her job, the Main Line Defendants acted unlawfully under the Rehabilitation Act when they:

    (a).    forced Plaintiff to disclose her status as a recovered drug addict.

    (b).    assumed, or presumed, that Plaintiff must have stolen or diverted medications from BMH because she was a recovered drug addict.

    (c).    suspended Plaintiff without pay because of her status as a recovered drug addict;

    (d).    commenced an internal investigation regarding Plaintiff because of her status as a recovered drug addict;

    (e).    required Plaintiff to submit to an assessment with an Employee Assistance Consultant;

    (f).    required Plaintiff to submit and disclose medical records pertaining to her disability, medical treatment, and recovery to the Employee Assistance Consultant;

    (g).    terminated Plaintiff's employment because of her status as a recovered drug addict;

    (h).    assumed and/or presumed that Plaintiff had a mental or physical disability that she did not have;

    (i).    assumed and/or presumed that Plaintiff must have acted and/or failed to act in a specific way because of and/or due to her status as a recovered drug addict;

    (j).    assumed and/or presumed that because Plaintiff was a

recovered drug addict, allowing her to remain an employee, would create an actual or potential liability to BMH and/or the Main Line Defendants in the future; and

(i). acted against Plaintiff based upon generalized stereotypes and/or assumptions regarding individuals who are recovered drug addicts.

75. Plaintiff believes, and therefore avers, that the Main Line Defendants treated her differently than similarly-situated employees who were not recovered drug addicts.

76. Plaintiff believes, and therefore avers, that the Main Line Defendants did not want a Registered Nurse who was a recovered drug addict to work at BMH.

77. Plaintiff believes, and therefore avers, that the Main Line Defendants' termination of her employment for suspicion of diverting medication, constituted pretext.

78. Rather, Plaintiff believes and avers that the Main Line Defendants considered her to be a liability solely because of her status as a recovered drug addict, without any other knowledge or information.

79. Plaintiff believes, and therefore avers, that but for discovering or learning that she was a recovered drug addict, the Main Line Defendants never would have suspended, investigated, or fired Plaintiff.

80. In so doing, the Main Line Defendants did not act upon any specific knowledge, information, or facts about Plaintiff or her functional capacities, other than the fact that she was a recovered drug addict who had successfully completed rehabilitation four years ago; rather, Plaintiff believes the Main Line Defendants acted only upon unfounded misperceptions, stereotypes, or prejudicial assumptions concerning an individual who are recovered drug addicts and who continue to require treatment by a psychiatrist and support from a sponsor.

81. The Main Line Defendants illegally classified and defined Plaintiff on the basis of her disability in a way that directly led to their

13

differential treatment of Plaintiff from other employees who had no history of drug addiction.

82. For those reasons, Plaintiff believes, and therefore avers, that the Main Line Defendants discriminated against her based on her disability by denying her the employment opportunities and benefits that were equal and available to other similarly-situated employees who were not recovered drug addicts.

83. Plaintiff believes, and therefore avers, that the Main Line Defendants' actions against her identified above were intentional or willful.

84. Plaintiff seeks all the rights and remedies to which she is entitled under the Rehabilitation Act and applicable federal regulations, including compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests for this Honorable Court to enter judgment in her favor and against the Main Line Defendants and award her damages for lost past wages and benefits, lost present wages and benefits, lost future wages and benefits, as well as damages for humiliation, emotional distress, loss of standing and reputation, punitive damages, declaratory and injunctive relief, attorneys' fees and costs, and all other such relief that this Court deems to be necessary, appropriate or just. Plaintiff demands a jury trial.

Respectfully Submitted,

By: _____

MICHAEL J. DAVEY, ESQUIRE
PA I.D. No.: 200506

ECKELL, SPARKS, LEVY,
AUERBACH, MONTE, SLOANE,
MATTHEWS & AUSLANDER, P.C.

**300 W. State Street, Ste. 300**
**Media, PA 19063**
**Phone #: (610) 565-3700**
**Fax #: (610) 565-1596**
**[mdavey@eckellsparks.com](mailto:mdavey@eckellsparks.com)**

*Attorney for Plaintiff*

**DATED:   June 5, 2020**