IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE**, *a pseudonym* : | |
|                PLAINTIFF : | |
| vs. : | |
| : | No.: 2:20-cv-02637 |
| **MAIN LINE HOSPITALS, INC.,** : | |
| t/a, d/b/a, a/k/a BRYN MAWR : | |
| HOSPITAL, et al., : | |
|           DEFENDANTS: | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM

Plaintiff is a recovered drug addict. She successfully completed drug rehabilitation, regularly attends support meetings, has a sponsor, and continues to receive medical and therapeutic care from a psychiatrist. Plaintiff has been clean and sober for over four years, and through perseverance and discipline, managed to maintain both her family and her career. Plaintiff is also a registered nurse in the Commonwealth of Pennsylvania. In this action, Plaintiff contends that that Main Line Hospitals, Inc., and Main Line Health, Inc.—her former employers— unlawfully disciplined (then ultimately terminated) her in violation of the Americans with Disabilities Act, As Amended, and the Federal Rehabilitation Act, upon discovering that she was a recovered drug addict. While this case centers around a private employment dispute between the parties, it will necessarily involve extremely sensitive facts concerning Plaintiff's status as a recovered drug addict and her personal life; information that Plaintiff has tried to prevent becoming public knowledge. Because Plaintiff believes that having to identify herself as a recovered drug addict in this case would subject her to a stigma that could harm her reputation both personally as well as professionally with current or prospective employers, she respectfully requests leave from this Court to redact her name and address from all public filings in this

1

matter, and proceed under a pseudonym.[1]

## I. STATEMENT OF FACTS

Plaintiff is—and remains—a Registered Nurse in the Commonwealth of Pennsylvania. *See,* ¶17 *of the time-stamped copy of Plaintiff's Complaint filed in this matter, which is attached as Exhibit "A."* Approximately 13 years ago, the Defendants hired Plaintiff as a nurse at Bryn Mawr Hospital ("BMH"). *Id.* at ¶ 18. During her employment, and up until the circumstances that led to the present suit, Plaintiff was a good employee who never received any formal discipline from the Defendants, and who always garnered positive employment reviews. *Id.* at ¶ 19, 20. To Plaintiff's knowledge, no patient safety complaints were ever lodged against her during her employment with the Defendants. *Id.* at ¶ 21.

Plaintiff, however, is a recovered drug addict. *Id.* at ¶ 55. If not controlled (as it has been for years), that addiction could cause Plaintiff to suffer difficulty thinking, reading, concentrating, communicating, or working. *Id.* at ¶ 56.[2]

On or about May 15, 2019, Plaintiff received a telephone call from the Director of Human Resources at BMH, who told Plaintiff to come to the

---

[1] Plaintiff is not requesting—nor does she intend to seek—leave to conceal her identity from the Defendants during discovery. For one, the Defendants (as Plaintiff's former employers) already know who she is. Second, the Defendants can already connect Plaintiff's identity to the substance of the allegations in her Complaint and her status as a recovered drug addict due to the previous administrative filings in this matter. To that end, then, it would be futile and non-productive for Plaintiff to attempt to shield her identity during discovery. But if this Court grants Plaintiff leave to proceed anonymously, Plaintiff will request—and to the extent necessary, file a motion for protective order seeking—that any document or record produced or created during the litigation not be filed publicly unless under seal, or (preferably) redacted to remove any identifying information.

[2] The Federal Substance Abuse and Mental Health Services Administration acknowledges that "most scientists and medical researchers now consider dependence on alcohol or drugs to be a long-term illness, like asthma, hypertension. . . or diabetes." *See, "What is Substance Abuse Treatment?"* at p.2, available online at https://store.samhsa.gov/sites/default/files/d7/priv/sma14-4126.pdf (last accessed June 2, 2020).

2

hospital to discuss a letter that had been received containing allegations about Plaintiff. *Id.* at ¶¶ 22, 24. That same day, Plaintiff met with the Director of Human Resources and the BMH Director of Nursing, at which time she was shown a typed letter received from an anonymous author. *Id.* at ¶¶ 25, 27. The Director of Human Resources read the contents of the letter, which stated that Plaintiff was a recovering drug addict. *Id.* at ¶ 28. After reading the letter, the Director of Human Resources asked Plaintiff to admit whether she was a recovering drug addict. *Id.* at ¶ 29. Plaintiff truthfully disclosed that she had been a recovered drug addict for approximately four years and had received inpatient treatment for drug addiction. *Id.* at ¶ 30. Plaintiff also stated that she had been clean for the last four years, had attended narcotics anonymous meetings, was under treatment from a psychiatrist, and had a sponsor. *Id.* at ¶ 31. After learning that information from Plaintiff, the Director of Human Resources stated that BMH now needed "to do an investigation," and "go through any missing medications." *Id.* at ¶ 32. To Plaintiff's knowledge, however, the anonymous letter neither alleged nor claimed that Plaintiff had ever diverted or stolen medications from BMH. *Id.* at ¶ 33. The Director of Human Resources then told Plaintiff that she was suspended without pay as of May 16, 2019, pending the findings of the investigation, and directed Plaintiff to undergo a mandatory assessment with an Employee Assistance Consultant to obtain clearance to return to work. *Id.* at ¶ 34.

Plaintiff met with the Employee Assistance Consultant on or about May 21, 2019, who told her that returning to work "shouldn't be a problem," because Plaintiff had completed rehabilitation and had a sponsor. *Id.* at ¶¶ 35, 36. The Employee Assistance Consultant also told Plaintiff that she needed to provide a note from her treating psychiatrist verifying her treatment and rehabilitation status. *Id.* at ¶ 37. Plaintiff believes that sometime between May 28 and May 30, 2019, her psychiatrist sent an email to the Employee Assistance Consultant confirming her treatment and rehabilitation status. *Id.* at ¶ 38.

On or about May 30, 2019, the Director of Human Resources directed

3

Plaintiff to attend a second meeting at BMH. *Id.* at ¶ 39. At that meeting, the BMH Director of Nursing told Plaintiff that BMH had allegedly found nine medications that were unaccounted for over the last six months, and as such, they were "moving for termination." *Id.* at ¶ 40. Plaintiff was told at that meeting that she was being terminated for "suspicion of diverting controlled substances." *Id.* at ¶ 43. Plaintiff, however, never stole or diverted any medications from BMH or the Defendants. *Id.* at ¶ 44.

The Defendants' actions in placing Plaintiff on an unpaid suspension then subsequently terminating her employment resulted in a collateral administrative proceeding by the Commonwealth of Pennsylvania Board of Nursing that remains pending, and which threatens Plaintiff's ability to continue practicing as a Registered Nurse in Pennsylvania.[3] *Id.* at ¶ 52.

Contemporaneous with the filing of this Motion, Plaintiff commenced this civil action via Complaint, alleging that upon learning of her status as a recovered drug addict, the Defendants (acting by and through their agents) unlawfully discriminated against Plaintiff on the basis of an actual or perceived disability in violation of the Americans with Disabilities Act, As Amended, and the Federal Rehabilitation Act. *Id.* at ¶¶ 60(a)–(i), 74(a)–(i). While desiring to vindicate her claims, but cognizant of the public and private reputational harm she could suffer by doing so in the public arena, Plaintiff seeks leave from this Court to proceed with this matter anonymously.

## II. QUESTION PRESENTED.

> Under the law, the people possess a deeply-rooted right of access to judicial proceedings. But a court may permit a plaintiff to proceed anonymously where a reasonable fear of severe harm exists and the interests of anonymity outweigh the public's interest in knowing the identity of the litigants. Here, Plaintiff has

---

[3] To Plaintiff's knowledge, the administrative proceeding by Commonwealth Board of Nursing is currently a non-public matter.

a reasonable fear that public disclosure of her identity as a recovered drug addict—a fact she has endeavored to keep private—could cause substantial reputational harm to her both privately and professionally as a practicing, registered nurse. And the interests favoring full disclosure are lessened because Plaintiff is not a public figure, and the matter before the Court essentially concerns a private employment dispute between the parties. Should Plaintiff be granted leave to proceed anonymously?

### III. APPLICABLE LAW.

Federal Rule of Civil Procedure 10(a), which requires that every pleading contain the names of all parties, embodies the general rule that "judicial proceedings, civil as well as criminal, are to be conducted in public." *Doe v. Megless*, 654 F.3d 404, 408 (3d. Cir. 2011); a public right of access that is deeply-rooted in the common law. *New Jersey Media Grp. Inc. v. U.S.*, 836 F.3d 421, 434 (3d. Cir. 2016). But that right, while sacrosanct, is not absolute. Courts in this district have historically permitted plaintiffs to proceed anonymously where a fear of social stigmatization could have foreseeably attached from disclosure of their identities. *See, Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990) (recognizing that cases involving "abortion, birth control, transexuality [sic], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality," involved sufficient privacy interests to permit plaintiffs to proceed anonymously). *See also, e.g., Doe v. Brennan, et al.,* No.: 19-cv-05885 (E.D. Pa. 4/27/2020) (permitting plaintiff who identified as a gay male and HIV-positive to proceed anonymously in employment discrimination action); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) (permitting plaintiff who was an alleged sexual assault victim to proceed anonymously); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) (holding that plaintiff who suffered from numerous psychiatric disorders was permitted to proceed anonymously in action seeking total disability benefits from his private disability carrier).

When a plaintiff sufficiently alleges the existence a reasonable fear of

severe harm in the absence of litigating anonymously, a court should "balance [the] plaintiff's interests and fear against the public's strong interest in an open litigation process." *Megless*, *supra*. To do so, a court should set upon each side of the scale non-exhaustive factors favoring privacy, and those counseling against it. The list of non-exhaustive factors favoring a party's ability to proceed anonymously include:

> "(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Id.* at 409.

On the other hand, the non-exhaustive factors militating against the use of a pseudonym include:

> "(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated." *Ibid*.

The decision to allow a litigant to proceed anonymously rests in the discretion of the trial court. *Brennan, supra* at p. 3.

## IV. ARGUMENT.

When all the considerations are weighed, the scale tips in favor of allowing Plaintiff to proceed with this matter anonymously. Specifically, as to the list of factors favoring the use of pseudonyms, all but one fall

on Plaintiff's side of the ledger. First, she has endeavored up until this point to keep her status as a recovered drug addict out of the public sphere, and has requested permission from this Court to proceed anonymously at the earliest possible opportunity she could (factor one).[4]

Second, Plaintiff's fear of social stigmatization is both reasonable and real; it is something that she has endeavored to keep private (factor two). If forced to publicly disclose the nature of her addiction to the world, Plaintiff fears the reputational harm and backlash she may endure from family, friends, and acquaintances, as well as current or prospective employers. She also fears the possible negative effects such a stigmatization may have on her continued sobriety and treatment.[5] In Smith v. U.S. Office of Personnel Management, Judge Legrome D. Davis of this court found the fact that the plaintiff "reasonably fear[ed] embarrassment to himself and his family if his identity is disclosed because of the societal stigma associated with addiction," weighed in favor of permitting anonymity. *Smith v. U.S. Office of Personnel Mngmt.*, 2014 U.S. Dist. LEXIS 203893 at *4 (E.D. Pa. 1/21/2014). As such, the second factor weighs in Plaintiff's favor.

Third, the foreseeable legal issues that may need to be decided in this case—namely, whether the facts as developed through discovery support Plaintiff's claims of discrimination—carry no overwhelming public magnitude (factor four). While important, certainly, those issues would be resolved by this Court in the context of a private employment dispute between the parties, where the outcome (one way or the other) would

---

[4] While Plaintiff did not seek or request anonymity when she filed her administrative charges of discrimination against the Defendants with both the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission (as she was required to do), those filings—to Plaintiff's knowledge and understanding—are neither accessible by the public nor currently in the public sphere.

[5] The Hazelden Beatty Ford Foundation recognizes that "the stigma of addiction is seen as the primary barrier to effective addiction prevention, treatment and recovery efforts at the individual, family, community and societal levels." Available online at https://www.hazeldenbettyford.org/recovery-advocacy/stigma-of-addiction (last accessed June 2, 2020).

have no greater or lesser impact on the public at large if Plaintiff's identity is known or not (unlike, perhaps, First Amendment claim against a public employer).

Fourth, denying Plaintiff the ability to proceed anonymously would force her to balance her desire for privacy as someone who has grappled with drug addiction against her ability to vindicate her rights under federal employment laws (factor five). Put another way, Plaintiff would be forced into a Hobson's choice: either surrender her access to the court, or allow anyone she knows (or may come to know in the future) to discover that she is a recovered drug addict via a simple Google search.

Finally, Plaintiff has only one motivation in bringing this action—vindicating her rights to be free from adverse employment actions on the basis of an actual or perceived disability (factor six).

As to the contrary factors, they do not, on the whole, tip the balance. While "the thumb on the scale. . . is the universal interest in favor of open judicial proceedings," *Megless, supra* at 411, Plaintiff is a private citizen, not a public figure. And the subject matter of this action is a private employment concern between the parties under the Americans with Disabilities Act and the Rehabilitation Act; not one implicating fundamental or constitutional rights, which could have far-reaching effects on the populace as a whole. Finally, there are no indications that any of the parties possess any nefarious or ulterior motives. Therefore, while the first factor arguably weighs against Plaintiff proceeding anonymously, neither of the remaining two factors do. This list, moreover, is not comprehensive. *Id.* at 409. As such, the fact that the Defendants—who already know Plaintiff's identity and will be able to conduct discovery and fully litigate this case *regardless* of whether Plaintiff proceeds named or unnamed—further weighs in favor of allowing Plaintiff to file anonymously. *Ibid.* ("[t]rial courts will always be required to consider those other factors which the facts of the particular case implicate.") *(internal quotations and brackets omitted).* *See, e.g., Smith v. U.S. Office of Personnel Mngmt.*, *supra* (the fact that

plaintiff's identity had already been disclosed to defense counsel weighed in favor of permitting anonymity).

## V. C<small>ONCLUSION</small>.

Plaintiff is a recovered drug addict. She also has colorable claims against the Defendants for alleged violations of her rights as an individual with a disability under the Americans with Disabilities Act and the Rehabilitation Act. Those characteristics should not have to exist mutually exclusive from one another. For Plaintiff, her addiction differs from other physical impairments like vision problems or hearing loss. While all those conditions might be classified as disabilities under the employment statutes in question, the latter do not carry with them the social stigma that is so often (and easily) associated with the former. Plaintiff simply requests that this Court grant her leave to pursue her civil claims without first having to sacrifice her civil dignity. As such, she respectfully requests that this Court grant this Motion, enter an Order in the form or substance as that attached, permit her to proceed with this litigation under the pseudonym "Jane Doe," and allow for her home address and other identifying information to be redacted and/or removed from any public filings in this matter.

Respectfully Submitted,

By: _____
**MICHAEL J. DAVEY, ESQUIRE**
**PA I.D. No.: 200506**

**ECKELL, SPARKS, LEVY, AUERBACH, MONTE, SLOANE, MATTHEWS & AUSLANDER, P.C.**
300 W. State Street, Ste. 300
Media, PA 19063
Phone #: (610) 565-3700
Fax #: (610) 565-1596
mdavey@eckellsparks.com

**DATED: June 5, 2020**        *Attorney for Plaintiff*