IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE**, *a pseudonym*,<br><br>    Plaintiff,<br><br>    v.<br><br>**MAIN LINE HOSPITALS, INC., et al.,**<br><br>    Defendants. | **CIVIL ACTION**<br><br>**NO. 20-2637-KSM** |

MEMORANDUM

**MARSTON, J.**                                                                                       September 1, 2020

On June 5, 2020, Plaintiff, a registered nurse, filed a Complaint under the pseudonym "Jane Doe" against her former employer, Defendants Main Line Hospitals, Inc. and Main Line Health, Inc., alleging that Defendants unlawfully disciplined and terminated her after learning that she was a recovered drug addict, in violation of the Americans with Disabilities Act, as Amended (ADAAA), 42 U.S.C. § 12101, and the Federal Rehabilitation Act, 29 U.S.C. § 701. (Doc. No. 1; *see also* Doc. No. 4.)  Doe worked at Bryn Mawr Hospital for approximately thirteen years before being terminated in late May 2019, after Defendants received an anonymous letter stating that Doe was a recovered drug addict. (Doc. No. 1 at ¶¶ 18, 27–28.) Upon confrontation of the letter's allegations, Doe admitted that she had a history of opioid addiction and had attended inpatient rehabilitation four years earlier. (*Id.* at ¶¶ 29–30.) Defendants then conducted an investigation that uncovered approximately nine medications were unaccounted for in the last six months, and subsequently terminated Doe. (*Id.* at ¶¶ 32, 40, 43.) Doe alleges that Defendants' termination of Doe for suspicion of diverting medication constituted pretext. (*Id.* at ¶ 63.)

Presently before the Court is Doe's Motion for Leave to Proceed under a Pseudonym. (Doc. No. 4.)  Doe argues that she should be able to litigate her case anonymously because the matter involves extremely sensitive facts concerning her status as a recovered drug addict and disclosure of such information could subject her to stigma, thereby harming her personal and professional reputations.  (*Id.*)  Defendants oppose Doe's motion, contending that Doe has failed to demonstrate that exceptional circumstances exist to override the strong presumption of public access to judicial proceedings.  (Doc. No. 7.)

For the reasons discussed below, the Court denies Doe's motion.

**I.      Legal Standard**

Federal Rule of Civil Procedure 10(a) requires plaintiffs to identify the parties by their real names in the complaint.  Fed. R. Civ. P. 10(a); *see also Doe v. Meglass*, 654 F.3d 404, 408 (3d Cir. 2011); *Doe v. Rutgers*, Civ. No. 2:18-cv-12952-KM-CLW, 2019 WL 1967021, at *1 (D.N.J. Apr. 30, 2019).  "Courts have explained that [Rule 10(a)] illustrates 'the principle that judicial proceedings, civil as well as criminal, are to be conducted in public.'"  *Meglass*, 654 F.3d at 408 (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).  "'Identifying parties to the proceeding is an important dimension of publicness.  The people have a right to know who is using their courts.'"  *Id.* (citation omitted).

"A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.'"  *Id.* at 408 (citation omitted).  However, in exceptional cases, courts have permitted litigants to proceed anonymously, even though there is no explicit authority for doing so in the Federal Rules.  *Id.*; *see also Doe v. Brennan*, No. 5-19-cv-5885, 2020 WL 1983873, at *1 (E.D. Pa. Apr. 27, 2020).  To proceed anonymously, a plaintiff must demonstrate "'both (1) fear of severe harm, and (2) that the fear of severe harm is reasonable.'"  *Meglass*, 654

F.3d at 408 (citation omitted).  A plaintiff's fear that she may suffer embarrassment or economic harm does not suffice.  *Id.*; *see also Doe v. Temple Univ.*, Civil Action No. 14-04729, 2014 WL 4375613, at *1 (E.D. Pa. Sept. 13, 2014).  Examples of areas where courts have found that a limited exception exists and allowed plaintiffs to use pseudonyms include cases involving "abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality."  *Meglass*, 654 F.3d at 408; *see also Doe v. Triangle Doughnuts, LLC*, No. 19-cv-5275, 2020 WL 3425150, at *4 (E.D. Pa. June 23, 2020).

"District courts have the discretion to determine whether the exceptional circumstances warranting anonymity are present."  *Id.*; *see also Doe v. Ct. of Common Pleas of Butler Cty.*, Civil Action No. 17-1304, 2017 WL 5069333, at *1 (W.D. Pa. Nov. 3, 2017).  In making such a determination, "district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process."  *Meglass*, 654 F.3d at 408.  In conducting the balancing test, courts in this Circuit weigh nine, non-exhaustive factors, six of which favor anonymity and three of which favor "the traditional rule of openness."  *Id.* at 409–10 (endorsing the nine-factor test first articulated in *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997)); *see also Rutgers*, 2019 WL 1967021, at *1–2.

The factors that support the use of a pseudonym include:

'(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.'

*Meglass*, 654 at 409 (quoting *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 467–68).  On the other hand, factors that weigh against anonymity include:

> '(1) the universal level of public interest in access to the identities of the litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.'

*Id.* (quoting *Provident Life & Acc. Ins. Co.*, 176 F.R.D. at 467–68).

We address these nine factors in turn below.

## II.   Discussion

### A. *Factors that Support the Use of a Pseudonym*

As to the first set of factors, we first consider the extent to which Doe's anonymity has been preserved. This factor favors plaintiffs "who 'make substantial efforts to maintain anonymity' and '[l]imit disclosure of sensitive information to few other people.'" *Rutgers*, 2019 WL 1967021, at *2 (citation omitted). Defendants argue that Doe has not shown that she has undertaken any efforts to maintain her anonymity prior to filing her lawsuit, citing evidence indicating that Doe informed some of her co-workers of her addiction history, disclosed her history to various individuals in the Main Line Health System, and filed her EEOC charge in her own name. (Doc. No. 7 at p. 10 (citing Exs. C–F).)

However, in assessing a plaintiff's efforts to protect her anonymity, courts vary in their analyses as to what the relevant timeline is—specifically, some focus on whether the plaintiff has revealed her identity *since filing her lawsuit*, while others appear to address whether the plaintiff has tried to preserve her identity *all along, including prior to filing her lawsuit*. Compare *Doe v. Univ. of Scranton*, No. 3:19cv1486, 2020 WL 1244368, at *2 (M.D. Pa. Mar. 16, 2020) (concluding that "[t]he record provides no indication that *since initiating this lawsuit* plaintiff . . . allow[ed] others to discover his true name" (emphasis added)); *Doe v. Unum Life Ins. Co. of Am.*, Civil Action No. 13-6900, 2014 WL 1599919, at *2 (E.D. Pa. Apr. 18, 2014) ("Since the

4

*initiation of this lawsuit . . .* Jane Doe's identity has been confidential." (emphasis added)) *with Rutgers*, 2019 WL 1967021, at *2 (noting that the plaintiff's "name remained confidential throughout three Rutgers Office of Employment Equity ('OEE') investigations related to the allegations in the Complaint" and the "vast majority" of the people who knew her identity had been "involved either in the underlying facts or in the OEE investigations"); *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("*Before this litigation commenced*, Plaintiff conscientiously kept his illness confidential[.]" (emphasis added)).

It is undisputed that Doe's identity has remained confidential since she initiated her lawsuit on June 5, 2020.  Indeed, Defendants' argument centers entirely on disclosures Doe made *before* she filed her complaint.  (Doc. No. 7 at p. 10.)

In any event, it is significant that Doe does not represent anywhere in her moving papers or complaint that she has only shared her drug addiction history with a small circle of people, nor does she give us any indication as to how many people, or even what categories of people, she has informed.[1]  (*See* Doc. No. 3-2 at p. 7 (only noting, in a conclusory fashion, that Doe "has endeavored . . . to keep her status as a recovered drug addict out of the public sphere" and "it is something that she has endeavored to keep private").)  *See Scranton*, 2020 WL 1244368, at *2 (relying on the plaintiff's representation that he only revealed his sexual orientation to "his close friends, counsel, past partners, medical providers, counselors, the defendant, the Pennsylvania Human Relations Commission, the Scranton Human Relations Commission, and family

---

[1] Further, although Doe states that her administrative charges "are neither accessible by the public nor currently in the public sphere," it is notable that she also admits that she did not seek or request anonymity when she filed said charges with the EEOC and the Pennsylvania Human Rights Commission. (Doc. No. 3-2 at p. 7 n.4.)  *See Jones v. OSS Orthopaedic Hosp.*, Civil No. 1:16-CV-1258, 2016 WL 3683422, at *2 (M.D. Pa. July 12, 2016) (finding that the plaintiff preserved confidentiality where she "demonstrated that she repeatedly sought leave to proceed under pseudonym during these state agency proceedings" and noting that the state agency granted her request).

members"); *Triangle Doughnuts*, 2020 WL 3425150, at *5 (noting that plaintiff "only revealed that she was transgender and HIV-positive to counsel, close friends, family, treating physicians, and employers," the latter of whom she only informed "in an attempt to explain and address their discriminatory treatment"); *Hartford Life & Acc. Ins. Co.*, 237 F.R.D. at 550 (concluding that this factor weighed in favor of allowing the plaintiff to use a pseudonym where before the litigation, the plaintiff "conscientiously kept his illness confidential from his co-workers and colleagues for fear of their reactions and only revealed his condition to a few close friends, family and medical providers"). And, as Defendants point out, Doe admits that some of her co-workers were aware of her status as a recovered drug addict. (*See* Doc. No. 7-1 (Ex. C.) at p. 9.)[2] Taken together, this factor weighs against allowing Doe to use a pseudonym.

Second, we consider Doe's reasons for seeking anonymity and whether those reasons are reasonable and substantial. Doe fears "the reputational harm and backlash that she may endure from family, friends, and acquaintances, as well as current or prospective employers" due to the social stigma associated with addiction. (Doc. No. 3-2 at p. 7.) In addition, Doe worries that such backlash may negatively impact her continued sobriety and treatment. (*Id.*) We are sympathetic to Doe's concerns, which are certainly reasonable in a society that stigmatizes drug addiction. *See Smith v. U.S. Office of Personnel Mgmt.*, Civil Action No. 2:13-cv-5235, 2014 WL 12768838, at *2 (E.D. Pa. Jan. 21, 2014) ("Plaintiff reasonably fears embarrassment to himself and his family if his identity is disclosed because of the societal stigma associated with addiction."). We also acknowledge that because of Doe's occupation, any current or future

---

[2] We note that Defendants also rely heavily on the emails Doe sent to officials at Main Line Health System after she was terminated. But, as in *Triangle Doughnuts*, Doe conceivably only informed those officials "in an attempt to explain and address [Defendants' allegedly] discriminatory treatment" and get her job back. As such, we do not consider the fact that Doe sent these emails in our analysis of this factor.

employers may be particularly concerned to learn of her history since nurses frequently dispense drugs to patients, such as opioids. As such, we are persuaded that this factor weighs in favor of allowing Doe to use a pseudonym.

As to the third factor, we must ask: "if this litigant is forced to reveal [] her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" *Meglass*, 654 F.3d at 410. While "the public has an interest in allowing those with a stigmatizing illness to sue," *see Smith*, 2014 WL 12768838, at *2, we cannot find that other recovered drug addicts would be deterred from suing if Doe is forced to reveal her name. Our conclusion hinges on the fact that recovered drug addicts and those with a history of substance abuse have previously brought cases like this one in their own names. *See Suarez v. Pa. Hosp. of Univ. of Pa. Health Sys.*, Civil Action No. 18-1596, 2018 WL 6249711, at *1 (E.D. Pa. Nov. 29, 2018) (the plaintiff, a "registered nurse who . . . long struggled with opioid addiction," sued her former employer, "contending that depression and her status as a recovering drug addict caused the Hospital to fire her"); *Gorey v. Carpenters Joint Apprentice Comm.*, Civil Action No. 08-5993, 2010 WL 1718288, at *1 (E.D. Pa. Apr. 27, 2010) (the plaintiff "alleges she was terminated . . . because of her history of drug addiction" and asserted discrimination claims under the ADA); *Reilly v. Lehigh Valley Hosp.*, Civil Action No. 09-CV-5816, 2012 WL 895459, at *1 (E.D. Pa. Mar. 15, 2012), *aff'd*, 519 F. App'x 759 (3d Cir. 2013) (the plaintiff, who had been a security officer for the defendant-hospital and "admit[ted] that he was a drug addict from 1997 to 2002," argued that the hospital "wrongfully terminated his employment in violation of the ADA and [Pennsylvania Human Relations Act] because it regarded him as a former alcoholic and drug addict"); *see also Poper v. SCA Ams., Inc.*, Civil Action No. 10-3201, 2012 WL 3288111, at *9 (E.D. Pa. Aug. 13, 2012) (the plaintiff, whose "medical records reveal

a long history of drug use," "claim[ed] that he was terminated because of the defendant's alleged perception of him as a drug addict"). Thus, this factor weighs against allowing Doe to proceed using a pseudonym.

Next, we consider whether Doe's claims are purely legal in nature, such that there is an "atypically weak public interest in knowing the litigants' identities." Defendants argue that Doe's claims are "highly fact-dependent" and note that she filed an 84-paragraph complaint in which she laid out the specific details of her discharge. (Doc. No. 7 at p. 14.) We agree—Doe's claims are highly fact-intensive, as illustrated by her own complaint. Unlike in *Smith*, where the "main issue" was "a legal one"—namely, whether the Office of Personnel Management needed to approve federal health insurance plans, such as the plaintiff's own, that did not cover non-hospital residential addiction treatment facilities and whether the Office wrongly denied him benefits for such a program, *see* 2014 WL 12768838, at *1—here, Doe is not merely challenging the legality of a policy or practice. Rather, she claims that Defendants discriminated against her by unlawfully disciplining her (e.g., suspending her without pay after receiving the anonymous letter and hearing her admission that she was a recovered drug addiction; conducting an investigation into whether there were any missing medications) and wrongly terminating her after said investigation. Doe's assertions that she was discriminated against are inherently fact-specific. Accordingly, the fourth factor cuts against permitting Doe to proceed anonymously.

The fifth factor concerns whether Doe will refuse to pursue this litigation if she is required to publicly identify herself. Doe has not represented that she would withdraw her claims if publicly identified. Rather, Doe merely argues that she would be "forced into a Hobson's choice: either surrender her access to the court, or allow anyone she knows (or may come to know in the future) to discover that she is a recovered drug addict via a simple Google

search." (Doc. No. 3-2 at p. 8.) But she does not tell us *what* she would ultimately decide. Because Doe has not given us a clear answer, we find this factor to be neutral.[3]

Finally, because Doe does not have illegitimate or ulterior motives in proceeding anonymously, the sixth factor weighs in favor of granting her motion.

### B. *Factors that Support Disclosure*

We now turn to the second grouping of factors—those that generally weigh against allowing plaintiffs to use pseudonyms in judicial proceedings.

The first factor concerns the degree of public interest in the plaintiff's identity. Indeed, the Third Circuit has "acknowledge[d] the thumb on the scale that is the universal interest in favor of open judicial proceedings." *Meglass*, 654 F.3d at 411. This supports disclosure of Doe's identity.

Next, we consider whether the subject of the instant litigation heightens the public's interest. Because this is a dispute between private parties—as opposed to public officials or figures or government bodies—we find that this factor weighs in favor of allowing Doe to use a pseudonym.

Last, nothing in the record suggests that Defendants are opposing the use of a pseudonym for nefarious reasons. Rather, Defendants simply express their desire for an "even playing field," arguing that "if Plaintiff were permitted to proceed anonymously, 'Defendants would be placed at a serious disadvantage, for they would be required to defend themselves publicly while plaintiff could make her accusations behind a cloak of anonymity.'" (Doc. No. 7 at p. 15 (quoting *Ct. of Common Pleas of Butler Cty.*, 2017 WL 5069333, at *3).) This is a valid

---

[3] In any event, even if Doe had represented that she would withdraw her claims, we agree with Defendants that the factor, standing alone, does not outweigh the other factors. *See Meglass*, 654 F.3d at 410–11 ("[A] plaintiffs [sic] stubborn refusal to litigate openly by itself cannot outweigh the public's interest in open trials.").

concern. *See Ct. of Common Pleas of Butler Cty.*, 2017 WL 5069333, at *3; *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996) ("As courts have recognized, the mere filing of a lawsuit can have significant effects on a defendant."). Thus, this factor cuts against allowing Doe to proceed anonymously.

### C. Balancing Test

Taken together, only three of the factors weigh in favor of permitting Doe to use a pseudonym: Doe's fears of reputational harm, backlash, and possible relapse; her lack of ulterior motives; and the fact that she is a private figure and the public does not have a heightened interest this case. Five of the remaining six factors support disclosure of her identity, and one factor is neutral. Accordingly, we find that Doe has not overcome the strong presumption in favor of requiring parties to publicly identify themselves, and deny Doe's Motion.

In so ruling, we do not discount Doe's very real concerns about reputational harm, both personally or professionally, or her fears of relapse in the event of such backlash. But those types of fears are similar to those of other plaintiffs who have alleged that they were discriminated against because of their histories of substance abuse, and it is clear that several similarly-situated plaintiffs have publicly identified themselves in their own litigations. Finally, we would be remiss to ignore that "embarrassment and fear of economic harm" alone are not enough for a plaintiff to meet her burden to proceed anonymously. *See Meglass*, 654 F.3d at 408; *K.W. v. Holtzapple*, 299 F.R.D. 438, 439–40, 442 (MD. Pa. 2014) (denying the plaintiffs' motion to use fictitious names, where the plaintiffs sued over disciplinary action taken by their university after a search resulted in the discovery of contraband, like marijuana, and "plaintiffs . . . only advanced arguments of embarrassment in front of peers and professors along with the possibility of denial of future employment benefits"). Again, although we are sympathetic to

Doe's concerns, we find that they are not so exceptional as to outweigh the other factors.

### III.  Conclusion

For the foregoing reasons, we deny Doe's Motion for Leave to Proceed Under a Pseudonym (Doc. No. 3).

An appropriate order follows.